Good morning, your honors. My name is James Costas. I represent the appellant, the plaintiff below, Norma Orue. I would respectfully suggest that if the court is trying to determine how the California Supreme Court would rule on this issue, that the starting point would be Gabaldon's decision, the California Supreme Court's ruling in that case. I recognize that it wasn't the same issue that this court has to deal with, but what's significant about Gabaldon is that the court was dealing with the interplay between service contracts and manufacturer's warranties within the context of Song Beverly. And in order to reach its conclusion in that case, it had to talk about, you know, what those two devices are and what the legislature intended by them. And the court was pretty clear that under Song Beverly, service contracts and manufacturer's warranties are two separate and distinct, you know, entities or legal creatures, if you will, and that there should not be any kind of overlap between the two. Service contracts are sold differently. And so what is your response to the district court's point that what you're essentially asking is for the district court to read the word only into the statutory exception so that it would permit a service contract to run concurrently with an express warranty where the contract only covers items or costs not covered by the express warranty? My position is that that is what the statute means by the language that the legislature used. How do you address, I think it was Judge Pragerson's? Yes, ma'am. Judge Pragerson's conclusion. Well, I respectfully disagree with the conclusion reached. I argue, my position is that had the legislature intended the result that the judge came to and that Ford argues for, they would have said that you can have overlap if the service contract includes items, costs, or relief not found in the manufacturer's warranty. And in the absence of any language like that, in my position, if you look at the first sentence of the statute and then you follow it with the two sentences after that, that it means only. I'm sorry. I'm sorry. I'm just trying to find statute here. Okay, I have it. Oh, I'm sorry. I'm sorry. I thought you were talking. No, the first sentence of 1794.41A3 says no service contracts can be sold unless all the following are present. And it says the contract is applicable only to items, costs, and time periods not covered by the express warranty. Then after that, there are two sort of qualifications that are listed that explain when a service contract can overlap a manufacturer's warranty. And as I read the statute, the only time you can have an overlap is if the service contract consists entirely of items, costs, or relief that are not. The legislature didn't use the word entirely. Well, yes, I understand that. Well, I respect your submission. Exactly what does the statute say? It doesn't say entirely. It doesn't say only. And I think any sensible reading is that if there are some additional items that were not covered by the warranty, then you can have this additional service contract. I see no other way to read it. Well, okay, I agree that if the service contract has items that are in the manufacturer's warranty and then it also has additional items that aren't found in the manufacturer's warranty, as to those items that are not found in the manufacturer's warranty, you can have an overlap. As to those items, the coverage under the service contract could begin to run on the same date as the manufacturer's warranty, and it could run concurrently with the manufacturer's warranty because those are entirely separate and distinct items. However, as to those items in the service contract that are the same as the items found in the manufacturer's warranty, our position is that the coverage under the service contract cannot begin to run until the manufacturer's warranty expires. And we believe that that interpretation — How do you get that out of the statute? Well, Your Honor, I get it from the language coupled with the California Supreme Court's decision in Gavildon where the Court examined that particular statute that we're talking about here and said that talking about the statute, the Supreme Court in Gavildon said that the statute does not permit a service contract to cover the same items as an express warranty. And so our position is the way that you comply with that analysis, that interpretation, is that you treat service contract coverage and manufacturer's warranty coverage as separate and distinct items. If you sell a service contract that has separate and distinct items, you can run that concurrently with the manufacturer's warranty. But if you're also including in your service contract items that are found in the manufacturer's warranty, it can't run concurrently because otherwise consumers are paying twice for the same thing. They're paying for coverage for a manufacturer's warranty, and they're also paying for the same coverage in the service contract. And according to the legislative history, at least, the express purpose of this statute was to prevent consumers from paying twice for the same coverage. So it's basically our position that when you do have kind of a hybrid service contract like this, the only overlapping, the only thing that can run concurrently are the items that are not in the manufacturer's warranty. That's it. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honor. Jan Chilton for Ford Motor Service Company. It is a relatively simple case, this one. It involves two sentences out of a statute. And the questions that Judges Fletcher and Wardlaw asked my opponent, I think, summarize our position rather well. The statute allows a service contract to run concurrently if it does either one of two things. Namely, it covers items or costs not covered in the express warranty, or it allows for greater relief than the express warranty. The statute allows for greater relief than the express warranty. It does either one of those two things. The service contract may run concurrently. And when it says service contract, it means the entire contract, not pieces and parts of the contract. If that had been what the legislature meant, it would have said that. And we illustrated at page 15 of our brief how, with very few words, the statute could be amended to say exactly what Mr. Kostas wishes to read into it. Well, I understand why Mr. Kostas – I mean, this is a consumer protection statute, and I can understand why some of the legislature certainly would have thought that they don't want consumers to pay more for the same thing that they were already getting from the manufacturer or the manufacturer himself. So the service contract should provide something in addition. But, however, when the sausage got made, it ended up not saying exactly that. Well, that's exactly right, Your Honor. And there was a reason explained in the legislative history for the way it came out. It's true that the motivation behind this statute was to avoid consumers paying twice for the same service or protection. There is, in this record, however, no evidence whatsoever that Ms. Aru paid twice for anything. True, the coverage ran for the same period, but the price wasn't allocated in that way, and there's no evidence to show it was. But to get back to the legislative history, the reason why the legislature ended up with the statute the way it was is set forth in the Department of Consumer Affairs Enrolled Bill Report, which is quoted in our brief. What they said was, we went out and did a survey, and we found that particularly with regard to appliances and electrical goods, manufacturer's express warranties are often multilayered. They'll have a 90-day parts warranty, a one-year labor warranty, a two-year coverage over something else. And it's just too complex to try to tell a consumer, okay, this extended service contract now, it gives you coverage for, you know, three years minus 90 days of parts, two years of labor, and, you know, some lesser period of something else. That's what Mr. Costas is arguing for, exactly that kind of layered extended service agreement, which was expressly considered by the legislature and rejected. It is a hypothetical question. I know it's not our case. Suppose you had some disreputable seller of service contracts, and in an effort to try to circumvent this law, says, we'll put in trivial stuff. You know, we'll give you a calendar. You know, Your Honor, I anticipated that I was going to get that question. I wrote down, the first thing on my notes is, any statute may be abused, but there's no showing of abuse here. And really, that's my answer to it. Yes, of course, this statute could be abused. But that's not this case. So maybe you're reading in some materiality element. Well, I would say that if the additional coverage is truly trivial, so, you know, lacking in value that one could say simply by looking at it that it didn't add anything to the contract, then you could say, yes, that's an abuse of this statute. But here there's no allegation of that, and there's no proof of that. Here there were three additional items of coverage. There was, if the car broke down more than 100 miles from, well, more than 99 miles from the customer's home, the customer got lodging, meals, transportation to the destination, and transportation back to pick up the car, that's a substantial benefit in itself. For lesser breakdown at a nearer point to home, the consumer would get $75,000 worth of transportation expense paid, and there was the additional out-of-fuel call. So here we have those three benefits. None of them have been shown in this record to be insubstantial or just a device to get around the statute as in the hypothetical that you were proposing. I say that's a case for another day. If a court comes across a, you know, a disreputable seller offering, you know, a dime of extra coverage, it'll know how to handle that. You don't have to decide that in this case because the facts before you don't reach that hypothetical. Well, I suppose, counsel, that in a case which was kind of borderline, the court could look at the cost for the additional service versus the value that is received. And if the cost is more than the value received, one might have a case where we might be hard-pressed to say that it was an abuse. That's true, although I would point out that the de Seguera court, in the Court of Appeals unpublished decision, did point out that the statute contains no dollar limit on additional coverage or additional remedy, so that any not insubstantial additional remedy or additional coverage should bring the service contract within the exception of the second sentence. If the Court has no further questions. Thank you, Mr. Chilton. Thank you very much. Mr. Costas, any rebuttal? I just wanted to address quickly this idea that there was no evidence about whether the additional benefits in this case were substantial or insubstantial. I would point out it was their motion for summary judgment. They chose the theory that they were going to present to the district court, and their theory was that they can sell these contracts as is, based on their interpretation of the statute. There was no underwriting or any evidence presented in the moving papers, and therefore there was no obligation to present any kind of evidence in the opposition. This was presented and opposed strictly on the matter of statutory construction of that particular Song Beverly statute. And I just finally, it just seems to me, if you went out today and you bought a car and it had a three-year, 36,000-mile manufacturer's warranty, and Ford sold you a service contract that also had a three-year, 36,000-mile time period and it duplicated the manufacturer's warranty, we all agree that would be a violation of Song Beverly. We respectfully submit that you can't get around that if you're a service contract provider by just simply tacking on some additional benefit. We respectfully submit that the legislature intended these two things to be separate and that the coverage for the two should be separate. Thank you. Thank you, Mr. Chilton. Thank you. The case is submitted. We'll stand at recess for the day. I'm going to go to the restroom. All right. Maybe you could rescue my shoe.
judges: Fletcher, Silverman, Wardlaw